## Case No. 3,947.

### In re DODGE.

[2 Ben. 347; [1] 7 Am. Law Reg. (N. S.) 438; 1 N. B. R. 435 (Quarto, 115); 1 Am. Law T. Rep. Bankr. 120.]

District Court, S. D. New York. April 6, 1868.

#### BANKRUPTCY—DISCHARGE—"NO ASSETS."

Where the assets of a bankrupt consisted of an interest in certain notes, from which the assignee in bankruptcy had collected nothing for more than sixty days after the adjudication of bankruptcy: *Held*, that, "no assets" had come to the hands of the assignee, within the meaning of section 29 of the bankruptcy act [of 1867 (14 Stat. 531)].

[Cited in Re Van Riper, Case No. 16,874.]

Before Henry W. Allen. Register.

In this case the register certified to the court the following statement of facts and questions: "The only assets of the bankrupt [Oliver W. Dodge] consist of certain notes, accounts, and claims, all past due and unpaid, in which he had a one-seventh interest,

valued at $250, which interest has passed to the assignee, Mr. John Sedgwick, who has not received or paid any moneys whatever for, or on account of, the bankrupt's estate. One or more creditors have proved their claims against the estate of the bankrupt. More than sixty days having elapsed since the adjudication of bankruptcy, can the bankrupt now apply to the court for his discharge, under section twenty-nine of the act, on the ground that there are no assets? Are accounts, claims, and demands, from which nothing may be collected or realized, considered to be assets within the meaning of said section twenty-nine, so as to prevent the bankrupt from making application for his discharge until .after the expiration of six months?"

[And the said parties requested that the same should be certified to the judge for his opinion thereon.

[Dated at the city of New York, the 27th day of March, A. D. 1868.] [2]

Martin & Smith, for bankrupt.

## Case No. 3,948.

### In re DODGE et al.

[9 Ben. 480; [1] 17 N. B. R. 504.]

District Court, S. D. New York. May 8, 1878.

#### USURY—LEX LOCI CONTRACTUS.

1. D. & Co. made two promissory notes for the accommodation of W. & Co. They were made payable at the office of D. Co., in New York City, to the order of W. & Co., and were delivered to W. & Co. who endorsed them and placed them in the hands of note-brokers in New York City to be disposed of. The note-brokers, who were in correspondence with the N. H. T. Co., a corporation in Connecticut, advising them of opportunities to purchase paper, wrote to the company and enclosed the paper of D. & Co., saying, "This paper can be had at ten per cent. discount. Will you take it?" The president of the company wrote back that the company would take the paper, and enclosed a check on a bank in New York City for the amount of the paper less the discount, which check was collected by the brokers. W. & Co had represented to the brokers that the paper was business paper, and by the understanding

---

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by. permission.]

[2] [From 1 N. B. R. 435 (Quarto, 115).]

[1] [Reported by Robert D. Benedict, Esq., and Benj. Lincoln Benedict, Esq., and here reprinted by permission.]

between the brokers and the company, the brokers were to offer to the company none except "first class business paper." D. & Co., being in bankruptcy, the N. H. T. Co. proved a claim on the notes, which claim was objected to on the ground of usury: Held, that the case was governed by the law of New York and not by the law of Connecticut; that the notes had no validity till they passed to the N. H. T. Co., and that they were void for usury.

2. The trustee of D. & Co. was not estopped from disputing the claim either because D. & Co. had charged W. & Co. with these notes on account on their books, or because, by a course of dealing, D. & Co. had led the public to believe that such paper was business paper, there being no evidence that the company acted or relied on any act or representation of the Co. or because the trustee of D. & Co., had proved the notes as debts against the estate of W. & Co. in bankruptcy.

3. That the claim must be expunged.

[In the matter of Anson G. P. Dodge and others, bankrupts.]

G. S. Hastings, for New Haven Trust Company.

E. R. Robinson, for trustee.

CHOATE, District Judge. This is a review of the decision of the register expunging the claim of the New Haven Trust Company, of which formal proof had been made.

The claim was upon two promissory notes made by the firm of Dodge & Co., the bankrupts, payable to the order of White & Co., and by White & Co. endorsed and placed in the hands of note-brokers in the city of New York to be disposed of and negotiated by them for account of White & Co. The notes were on five months time and made payable at the office of Dodge & Co., in the city of New York.

The New Haven Trust Company purchased the notes before maturity at a rate of discount higher than seven per cent. and the defence is usury.

The register properly finds, upon the evidence, that the notes were made and issued by Dodge & Co. for the accommodation of White & Co., and that the New Haven Trust Company was the first holder for value. They had their inception as contracts therefore by their negotiation to the New Haven Trust Company. and are usurious and void, if governed by the law of New York.

The facts in relation to the negotiation of the notes are as follows: One of the notes was placed by White & Co. in the hands of brokers by the name of Bound & Co., and the other in the hands of a broker by the name of Gallaudet. These brokers were in correspondence with the New Haven Trust Company advising them of opportunities to purchase paper. Bound & Co., acting under this general understanding with the company, wrote to them a letter enclosing the note, and saying, "This paper can be had at, say ten per cent. discount. Will you take it?" Thereupon the letter and note were submitted to the board of directors of the company who decided to take it, and the

president of the trust company wrote to Bound & Co. that they would take the paper, and by the same letter sent to Bound & Co. a check on a bank in New York City for the amount of the note less the discount. This letter was written and mailed at New Haven, Conn. On the receipt of the letter the brokers collected the check. Prior to the negotiation of the note White & Co. represented to the broker that the paper was business paper, and by the understanding between the broker and the trust company the former was to offer the trust company none except "first class business paper."

The facts as to the other note are conceded to be substantially the same.

Upon these facts it was properly decided by the register that the law of New York and not the law of Connecticut governs the case, and that the notes were void for usury. The loan was made in New York. What took place in Connecticut was that the lender there consented to make the loan. He accepted the offer of White & Co.'s agent, and when the president of the trust company's letter was mailed at New Haven the trust company had agreed to make the loan. The acceptance of an offer by letter is complete when the party who is to accept puts in the mail his letter of acceptance. Tayloe v. Merchants' Ins. Co., 9 How. [50 U. S.] 390. The money with which the loan was to be made, however, was in the city of New York, deposited with an agent of the trust company, and until that money was actually drawn, or at least until that agent, the Fourth National Bank, should accept and promise to pay the check to the holder, the money remained as before, entirely subject to the control of the trust company. Notwithstanding the writing of the letter enclosing the check the trust company could at any time before the check was presented have directed the bank not to pay the check. The very terms of the acceptance of the offer by the trust company implied a payment of the money in New York by it through its agent there, the Fourth National Bank, to White & Co.'s broker. In principle I do not think the case can be distinguished from an acceptance by an individual in New Haven of the same offer, to be carried into effect by the payment of the money by the lender to the borrower the next day in New York. And I cannot doubt that a loan thus made, if usurious by the law of New York, would be void, although the borrower and lender had agreed in Connecticut on the terms of the loan, so to be thereafter made in New York. The cases of Tilden v. Blair, 21 Wall. [88 U. S.] 241, and Providence Sav. Bank v. Frost [Case No. 11,453], are controlling authorities in this court, but in both those cases the money lent was paid to the borrower on the security out of the state of New York. In Tilden v. Blair, the acceptance of Tilden was taken to Illinois and there negotiated, and the transaction as a loan on the credit

of the acceptance was there consummated, and the money paid. In the Savings Bank Case, the notes were taken to Rhode Island, and there they were negotiated and the money paid. In the present case there was no loan made in Connecticut. The parties there agreed upon the terms of a loan to be made in New York, and it was made in New York.

It was urged on behalf of the trust company that the trustee of Dodge & Co. was estopped to dispute its claim on several grounds: First, because Dodge & Co. had charged White & Co. in account with these notes on their books; secondly, because, by a long course of dealing in similar paper, Dodge & Co. had led the public to believe that the paper made by Dodge & Co. and endorsed by White & Co., and put on the market, was the business paper of Dodge & Co.; and thirdly, because the trustee of Dodge & Co. had made proof of these notes as debts against the estate of White & Co. in bankruptcy. As to the first point, entries in the books of the bankrupts would not estop them, much less their assignee or trustee. Besides, as matter of bookkeeping, the charge of these notes was not improper, though they were accommodation notes. Book entries are made not with a view to the happening of insolvency, but with the expectation that obligations entered into will be performed. Although the mere giving of accommodation paper creates no debt unless and until the paper is negotiated, and therefore when bankruptcy intervenes and nothing has been done with the paper by the payee, the charge made becomes, in the event that has happened, erroneous in so far as it imports a debt from the payee to the maker; yet when the charge was made, it was doubtless expected that the notes would be negotiated by the payee and be paid by the maker with funds, to be afterwards received from and credited to the payee, and, in anticipation of this course of business, the charge was proper enough.

As to the second ground of estoppel it is enough to say that there is no evidence whatever that the trust company acted or relied on any act or representation whatever of Dodge & Co., except what appears on the notes themselves, and the making of notes payable to another party has never been held to be such a representation as estops the maker from showing that they were accommodation paper even in favor of one to whom the payee represented them to be such and who took them in good faith, on such representations of the payee. As to the third ground of estoppel, whether or not the trustee of Dodge & Co. had knowledge of the usury when he made proof of the notes against the estate of White & Co., does not appear. If he had not, he might very properly make proof of the notes as a contingent claim, assuming that they were

outstanding and valid debts against Dodge & Co., in the hands of endorsees for value, in which case he would have a valid claim against White & Co., if they should be proved against Dodge & Co., and even if he had knowledge of the usury, the proof of them against White & Co., if improper, would not operate as an estoppel in favor of the trust company, since it was at most a mistake, liable to be corrected on motion of any other creditor of White & Co., and the trust company has not upon the faith thereof parted with its money or changed its position as to the notes in question, which is essential to the creation of an estoppel in pais.

Decision of register expunging the claim confirmed.